## Case No. 12,296.

### SANDERS v. PARSONS.

[3 App. Com'rs Pat. 230.]

Circuit Court, District of Columbia. Nov. 2, 1859.

#### WITNESS—BIAS—UNCORROBORATED.

[Where the relation in which a witness stands to the cause makes it reasonable to suppose that he must labor under a strong bias to testify in favor of one of the parties, inconsistencies in his testimony may be taken into consideration to dispute his entire testimony as unworthy of credit, especially where it is not corroborated.]

Appeal from the decision of the commissioner of patents refusing to grant to him, said Henry Sanders, letters patent for improvement in cultivator teeth, and awarding priority of invention to said Thomas E. Parsons.

MORSELL, Circuit Judge. The appellant states his claim thus: "Having thus described my invention in cultivator teeth and the manner of constructing them, what I claim as new, and desire to secure by letters patent, is the flanches, a, a, and semicircular projection, B, on the tooth, and the flanches, c, c, and pinion, e, on the chair when constructed and arranged in relation to each other in the manner substantially as described and for the purposes set forth." The acting commissioner adopts for his opinion the report of the examiner, in which report it is stated: "In the matter of interference declared on the 17th day of November, 1858, between the applications of Henry Sanders and T. E. Parsons, for a patent for improvement in cultivator teeth, I have the honor of making to you the following report: Parsons' witness, D. S. Maynard, whose testimony is unimpeached, states that he was first shown by Parsons a model of his tooth, complete, on the 28th day of January, 1857, which model he knows was made by Parsons, and that he also made a duplicate model of the same for the said Parsons in September, 1857. Witnesses Thomas Maynard, Deboe, and Grimes also testify to the getting up of the said second tooth by Maynard in the fall of 1857. Witness Remington testifies to the construction of the second model by Maynard from November 1st to December 20th, but does not say in what year. Sanders' witnesses, Patridge and Sayer, whose testimony is also unimpeached, testify that a model of Sanders' tooth was first exhibited to one of them about the last of February, 1857, and to both on the 5th of March, 1857. I would therefore respectfully report that, in my opinion, priority of invention should be decided in favor of T. E. Parsons." The commissioner, immediately following, on the same paper, confirms the same, and adjudges priority of invention in favor of said Parsons, etc., dated March 25, 1859.

The appellant filed 12 reasons of appeal. The substance is that he has proved circumstances by his witnesses which show that the witness on the part of the appellee was utterly unworthy of credit, and that

therefore his testimony ought to have been ruled out by the commissioner, and that the testimony so offered by him fully established his claim to priority of invention. The report of the acting commissioner takes a general notice of the reasons of appeal, and, in substance, adds nothing to the reasons given in the opinion. The principle seems to be, to use his own language, that "admitting that D. S. Maynard (the appellee's witness) did so claim the improvement as his own property, it was not considered proper because of that fact to reject his contradictory statement when made under the solemnity of an oath, especially in the absence of any attempt to impeach him by the introduction of witnesses who would not believe him under oath. The office, therefore, felt bound to accept his sworn statement as true; and inasmuch as that statement clearly fixes the date of T. E. Parsons' invention a month prior to the time at which Sanders is shown to have invented the same thing, there seemed no alternative but to award priority to T. E. Parsons, as was done by the acting commissioner upon the recommendation of the assistant examiner."

Due notice of the time and place of the hearing of this appeal being given, the commissioner laid before me all the original papers, documents, and evidence, accordingly; and the said parties failing to appear and answer, according to the rules provided in such cases, the said case is taken up for consideration as submitted. The reason, as above stated, appears to be the principal ground upon which the decision rests. If the witness in other respects stood fair and free from suspicion, and only chargeable with such inconsistencies, as by the rules of law might and ought to be reconciled, then the principles as laid down by the acting commissioner would certainly be correct; but where the relation in which he has stood to the cause necessarily and naturally makes it reasonable to suppose he must labor under a strong bias to testify in favor of one of the parties, then the rule is entirely different,—more especially, when he testifies of facts taking place, in a place and at a time when, he says, no one else was present. Under such circumstances, the only means of detecting falsehood, and security of the party against the injurious consequences thereof, is to allow him to show inconsistencies and improbabilities in the testimony of the witness, to show him entirely unworthy of credit, proceeding from corrupt motives. And this brings me to the consideration of the circumstances urged by the appellant to show error in the decision.

As to the relation, he was joint in interest with the appellant until very shortly before taking the testimony under the authority given by the commissioner, at which time he says he sold out his interest to his partner for the paltry consideration of five dollars and some balance on account of expenses in the application for the patent. It is stated that the evidence of the sale of Maynard's interest was in writing. There is no such evidence among the papers laid before me.

The commissioner supposes that the model, etc., which the witness made, as he says, for Parsons was a duplicate of the one shown to him by Parsons in January, 1857. The witness does not say so. He says that he had not the model before him that Parsons showed him; that he did not know where it was at the time; that the tooth he made for Parsons was a complete tooth; that it was made from an old tooth of Sayer & Klimch's patent. This, without doubt, was the same which was presented with the petition on application of the appellee for a patent, and in which witness says he was one-half interested, and for which he was joint in the expenses. He says he could not tell exactly when he made it, but it was before he left Sayer, Remington & Co.'s shop (the time produced was about August or September), and that he claimed it as his invention, and that Parsons, in his various expressions, admitted the fact and thought it would supersede the tooth of Sayer & Remington.

Let what the witnesses have testified to be examined. The first witness was William H. Thomas. He says he had a conversation with Parsons in November, 1857, and at several other times, in which Parsons said that Maynard was getting up a tooth that would beat Sayer & Remington's. About the 20th of November, after Maynard showed him the tooth (Exhibit 1 was the one so shown. Figures and drawings 1, 2, 3, is the same). Maynard said so also,—that it would beat Remington's. It is also the same that Parsons called Maynard's tooth, and Maynard told him he was going to apply for a patent of this tooth. Maynard claimed it as his invention. Parsons said Maynard's tooth would beat Sayer & Remington's. Remington is the next witness. He says that, from conversations with Parsons, his understanding was that Maynard had got up, invented or projected a new cultivator tooth. On his cross-examination witness says he does not know whether he said "project," "originate," or "invent." Gardner Maynard, the next witness, says that he assisted Dolphus in getting up a cultivator tooth; thinks it was in August, 1857; that Exhibit 1 is a correct drawing, the only exception being that the one he helped to make had but one bolt, while the one in the drawing has two; that it was in Sayer & Remington's shop. Grimes is the next witness. He says that in the fall of 1857, the same tooth was shown by Maynard to witness; that he believes Maynard told him he invented the tooth; that he said he was getting up a cultivator tooth that would beat Sayer & Remington's tooth all to pieces; that he showed him a cultivator tooth afterwards that he said was his and Parsons' getting up together. Witness asked him who got it up. He said: "It was Parsons and I." He thinks that was the language. At one time Maynard told

him that he invented the tooth; at another time, that he and Parsons did. Do not these witnesses prove palpable inconsistencies between what the witness Dolphus S. Maynard said at one time as to who was the inventor, and at other times different persons, and show most clearly that the tooth made in August or September was not a mere duplicate of the one which he says was shown to him by Parsons in January, 1857, and further show that this was the only one that was made by either Maynard or Parsons? That the invention for which the appellee is now applying for a patent is not the same which the witness says he saw a model of in January, 1857, is, I think, pretty clear. The one in 1857 is said to have been made and invented by Parsons alone. The other is said (in a joint letter by Parsons & Maynard, among the files of the office, dated August 2, 1858, in various parts of it) to be the joint invention of the two. Sanders proves his invention to have been about March 3, 1857. This, I think, upon the whole of the testimony, taken together, proves him to be the prior inventor.

MORSELL, Circuit Judge. I, JAMES S. MORSELL, assistant judge of the circuit court of the District of Columbia, do certify to the honorable the commissioner of patents that, after notice duly given of the time and place appointed for the hearing of the above-mentioned appeal, all the papers and evidence were laid before me by the commissioner, and the parties thereto having failed to appear, according to the rules established in such cases, the said case was taken up and fully considered, and it is hereby adjudged and determined that there is error in said decision, and the same is therefore hereby annulled and set aside, and a patent is directed to be issued to said Henry Sanders as prayed.